*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

OLIVER RAVENELL,

        Plaintiff,

and

NGM INSURANCE COMPANY,

        Plaintiff-Appellee,

v

AUTO CLUB INSURANCE ASSOCIATION,

        Defendant-Appellant.

UNPUBLISHED
January 27, 2022

No. 348436
Wayne Circuit Court
LC Nos. 17-009231-NF;
16-006161-NF

ON REMAND

Before: SWARTZLE, P.J., and JANSEN and BORRELLO, JJ.

PER CURIAM.

This case returns to us on remand for reconsideration of our earlier opinion, *Ravenell v NGM Insurance Co*, unpublished per curiam opinion of the Court of Appeals, issued October 15, 2020 (Docket No. 348436), vacated by *Ravenell v NGM Insurance Co*, ___ Mich ___ (2021) (Docket No. 162281), in light of *Esurance Prop & Cas Ins Co v Mich Assigned Claims Plan*, ___ Mich ___; ___ NW2d ___ (2021) (Docket No. 160592), by order of our Supreme Court, *Ravenell v NGM Insurance Co*, ___ Mich ___ (2021) (Docket No. 162281). After reviewing *Esurance*, we conclude that plaintiff, NGM Insurance, is entitled to compensation from defendant, Auto Club Insurance Association (ACIA), due to equitable subrogation. Thus, we affirm the trial court's orders granting summary disposition to NGM and denying ACIA's motion for summary disposition.

## I. BACKGROUND

We previously stated the relevant facts of this case in *Ravenell*, unpub op at 1-3:

-1-

On November 6, 2014, Oliver Ravenell was struck by a car being driven by Thaddeus Stec. Ravenell filed a claim for personal-injury-protection (PIP) benefits with NGM, which was the commercial-automobile insurer of three vehicles listed on a policy issued by NGM to Omega Appraisals, LLC, a company for which Ravenell's wife was the resident agent. Ravenell also filed a bodily-injury claim for threshold damages with ACIA, Stec's auto-insurance carrier.

NGM paid in excess of $331,000 in PIP benefits to and on behalf of Ravenell. Eventually, however, NGM took the position that Ravenell was not covered by the policy that it issued to Omega because neither Ravenell nor his wife were listed in the policy as named insureds. NGM further took the position that ACIA, as Stec's insurer, was responsible for paying PIP benefits to Ravenell. NGM filed this lawsuit against ACIA, seeking reimbursement of the PIP benefits that it paid to Ravenell. NGM styled its complaint as one for "reimbursement, indemnification, and declaratory relief." The complaint contained two counts. NGM labeled the first count as "Defendant, ACIA, is the Sole Insurer in the Orders of Priority," and labeled the second count as unjust enrichment. NGM alleged that ACIA was required to pay Ravenell's PIP benefits because it was the only auto insurer in the orders of priority, and that ACIA "owes NGM in excess of $331,000.00."

Ravenell then filed a lawsuit against ACIA for PIP benefits, and the two lawsuits were consolidated in the trial court. After discovery, NGM filed a motion under MCR 2.116(C)(10), seeking partial summary disposition regarding liability. In that motion, NGM argued that it was never liable to pay PIP benefits to Ravenell under the no-fault act, [MCL 500.3101 *et seq*.,] and that ACIA was the only auto-insurer that was liable to pay those PIP benefits. Therefore, NGM asked the trial court to find that ACIA was "the insurer highest in the orders of priority to pay no-fault benefits" to Ravenell.

ACIA responded by arguing that NGM was not entitled to partial summary disposition and that the trial court should instead grant summary disposition in its favor under MCR 2.116(I)(2). ACIA first argued that NGM's claim was barred by the one-year statute of limitations set forth in MCL 500.3145(1) because NGM did not file suit within one year after the accident, and did not provide ACIA notice within that first year. In addition, ACIA argued that NGM's action was "an attempted subrogation claim, by which NGM purports to stand in the shoes of Ravenell [and] seek benefits" from ACIA. Furthermore, ACIA argued that NGM's subrogation claim failed because it had no contractual or statutory obligation to pay PIP benefits to Ravenell, and it therefore paid those benefits as a "mere volunteer." In support of this argument, ACIA relied on [*Amerisure Cos v State Farm Mut Auto Ins Co*, 222 Mich App 97, 102-103; 564 NW2d 65 (1997)], and [*Titan Ins Co v North Pointe Ins Co*, 270 Mich App 339, 343-344; 715 NW2d 324 (2006)].

Although NGM did not mention its unjust-enrichment claim in its motion for partial summary disposition, ACIA addressed the claim briefly in a footnote in its brief opposing that motion. Citing *Bellevue Ventures, Inc v Morang-Kelly Inv,*

*Inc*, 302 Mich App 59, 64; 836 NW2d 898 (2013), ACIA argued that, to be viable, an unjust-enrichment claim requires that the defendant received a benefit from the plaintiff. ACIA argued that only Ravenell received something from NGM, but that ACIA did not. ACIA argued that it could not retain something that it never received, and that NGM's unjust-enrichment claim therefore failed as a matter of law.

At the hearing on NGM's motion for partial summary disposition, the trial court ruled that ACIA was first in line of priority under MCL 500.3115 and that it received proper notice within one year of the accident. The trial court did not address ACIA's arguments regarding subrogation, and did not address NGM's unjust-enrichment claim. The trial court granted NGM's motion for partial summary disposition and denied ACIA's request for summary disposition under MCR 2.116(I)(2). NGM subsequently moved for summary disposition under MCR 2.116(C)(10), regarding the amount of damages, and the trial court granted that motion. The trial court subsequently entered a judgment against ACIA in the amount of $182,112.64. [Footnote omitted; second alteration in original.]

On appeal, we reversed the trial court's orders and remanded for proceedings consistent with our opinion. *Id*. at 8. In doing so, we concluded that NGM presented a claim for equitable subrogation, but that its equitable-subrogation claim failed because NGM acted as a "mere volunteer" when it paid PIP benefits to Ravenell. *Id*. at 3-7. NGM applied for leave to appeal to our Supreme Court. In lieu of granting NGM's application for leave to appeal, the Supreme Court vacated our opinion and remanded the case for us to reconsider this case in light of *Esurance*, ___ Mich ___. *Ravenell*, ___ Mich at ___; slip op at 1. In *Esurance*, our Supreme Court addressed a single issue: whether a no-fault insurer acts as a "mere volunteer" for equitable-subrogation purposes when paying PIP benefits it mistakenly thought it was obligated to make. *Esurance*, ___ Mich at ___; slip op at 7-19. Thus, we interpret our Supreme Court's order as directing us to reconsider this case only to the extent it is affected by *Esurance*.

## II. ANALYSIS

As we explained when this case first appeared before us:

On appeal, ACIA argues that the trial court erroneously granted NGM partial summary disposition and erroneously denied its request for summary disposition under MCR 2.116(I)(2). ACIA's principal argument is that whenever a no-fault-insurance carrier pays PIP benefits to a person injured in an auto accident and then seeks to be reimbursed for such payments from another insurer believed to be of higher priority, the action is necessarily one of equitable subrogation. ACIA further argues that NGM cannot prevail on an equitable-subrogation claim because it paid PIP benefits to Ravenell as a mere "volunteer" and that it has no right of subrogation to recover the benefits it mistakenly paid. ACIA relies on *Titan*, 270 Mich App at 343-344; *Amerisure*, 222 Mich App at 102-103; and *Michigan Mut Ins Co v Home Mut Ins Co*, 108 Mich App 274, 277-279; 310 NW2d 362 (1981). In contrast, NGM relies on *Madden v Employers Ins of Wausau*, 168

-3-

Mich App 33; 424 NW2d 21 (1988), to argue that payments of PIP benefits made by mistake may always be recovered.

This Court reviews de novo a trial court's grant or denial of a motion for summary disposition. *Titan*, 270 Mich App at 342. Whether NGM was entitled to recover against ACIA under a theory of equitable subrogation also raises an issue of law that we review de novo. *Hartford Accident & Indemnity Co v Used Car Factory, Inc*, 461 Mich 210, 215 n 5; 600 NW2d 630 (1999). [*Ravenell*, unpub op at 2.]

## A. THE NATURE OF NGM'S CLAIM

In our original opinion, we concluded that NGM's claim was a claim for equitable subrogation. *Id*. at 3-6. *Esurance* does not change our analysis on this issue because it addressed whether a no-fault insurer acts as a "mere volunteer" for the purposes of equitable subrogation, not whether a party has raised an equitable-subrogation claim. *Esurance*, ___ Mich at ___; slip op at 7-19. Thus, we reaffirm our conclusion that NGM alleged a claim for equitable subrogation for the reasons stated in our original opinion. See *Ravenell*, unpub op at 3-6.

## B. "MERE VOLUNTEER"

ACIA argues that NGM's equitable-subrogation claim must fail because NGM acted as a "mere volunteer" when it paid PIP benefits to Ravenell. Our Supreme Court addressed a similar issue in *Esurance*. In that case, Esurance paid PIP benefits to a claimant "pursuant to a no-fault automobile insurance policy, issued to another person, that was later declared *void ab initio*." *Esurance*, ___ Mich at ___; slip op at 1-2. Esurance then filed suit against the Michigan Assigned Claims Plan and the Michigan Automobile Insurance Placement Facility seeking reimbursement under the theory of equitable subrogation. *Id*. at ___; slip op at 2. The *Esurance* Court concluded that "an insurer who erroneously pays PIP benefits may be reimbursed under a theory of equitable subrogation when the insurer is not in the order of priority and the payments are made pursuant to its arguable duty to pay to protect its own interests." *Id*.

In *Esurance*, Esurance paid PIP benefits to the claimant because it thought a valid insurance contract existed and, therefore, that it had a legal obligation to pay those PIP benefits. *Id*. at ___; slip op at 3. As explained by the *Esurance* Court, in such a situation an insurer is not acting as a "mere volunteer" despite the lack of any actual duty to pay because the insurer is "protecting its own interests" by complying with its perceived obligations under the no-fault act. *Id*. at ___; slip op at 9-10, 16-18.

Such is the case here. NGM paid PIP benefits to Ravenell because NGM thought Ravenell's injuries were covered by one of its insurance policies. NGM later learned that this was not the case and stopped paying PIP benefits to Ravenell. Accordingly, NGM was in the same type of situation as Esurance: it paid PIP benefits based on a mistaken belief that it was required to do so by an insurance policy. In doing so, NGM was protecting its interests because failure to pay PIP benefits could result in litigation and violation of the no-fault act. See *id*. at ___; slip op at 14-18. Thus, NGM was not acting as a "mere volunteer" when it paid PIP benefits to Ravenell.

-4-

The parties do not dispute that ACIA is higher in priority than NGM. Consequently, NGM is entitled to reimbursement under the theory of equitable subrogation because it paid PIP benefits to Ravenell to protect its own interests and it is not the highest-priority insurer. See *id*. at ___; slip op at 2.

## C. UNJUST ENRICHMENT

We rejected NGM's unjust-enrichment argument in our original opinion because NGM failed to raise the issue at the trial court level and its claim was for equitable subrogation. *Ravenell*, unpub op at 7-8. *Esurance* did not address unjust enrichment. *Esurance*, ___ Mich at ___; slip op at 7-19. Thus, we reaffirm our unjust-enrichment holding for the reasons stated in our original opinion. See *Ravenell*, unpub op at 7-8.

## III. CONCLUSION

For the reasons stated in this opinion, we affirm the trial court's orders granting summary disposition to NGM and denying ACIA's motion for summary disposition. NGM is entitled to reimbursement for the PIP benefits it mistakenly paid to Ravenell.

/s/ Brock A. Swartzle
/s/ Kathleen Jansen
/s/ Stephen L. Borrello